IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO:

JAY WOLF, individually, and as guardian
for KAREN WOLF,

    Plaintiffs,

v.

FOUR MIDTOWN MIAMI CONDOMINIUM
ASSOCIATION, INC.

    Defendants
_____/

## COMPLAINT

COMES NOW, Plaintiff, JAY WOLF, individually, and as guardian for KAREN WOLF, by and through her undersigned counsel, sues the Defendants, FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC., and states as follows:

## JURISDICTIONAL ALLEGATIONS

1. The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, as this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district and a substantial part of property that is the subject of the action is situated within this judicial district.

3. Plaintiff, JAY WOLF is a resident of Miami-Dade and is sui juris. WOLF is the guardian and of his daughter KAREN WOLF.

4. KAREN WOLF is a 49-year-old woman who lives with schizoaffective disorder. This is a disorder characterized primarily by symptoms of schizophrenia, such as hallucinations or

delusions, and symptoms of a bipolar mood disorder, such as mania and depression. KAREN WOLF is therefore considered "handicapped" under 42 U.S.C. § 3602(h).

5. At all times material, JAY WOLF is associated with a person with a disability and accordingly, a covered person under 42 U.S.C. § 3604(f).

## THE PROPERTY

6. At all times material, FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC. (hereinafter "FOUR MIDTOWN MIAMI") is a Florida not for profit corporation existing to operate a 424 residential unit condominium association, located at 3301 NE 1st Ave., Miami, FL, 33137.

7. The rental unit at issue is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

## GENERAL ALLEGATIONS

8. May 1, 2014, KAREN WOLF moved into Unit L-0301 at FOUR MIDTOWN MIAMI. Unit L-0301was initially owned by JAY WOLF through a corporation, and then was transferred to JAY WOLF individually.

9. While KAREN WOLF has had schizoaffective disorder since she moved unto Unit L-0301, and had manifestations of the disability, there were no major issues regarding her tenancy in this condominium.

10. JAY WOLF became a member of the Board of Directors of FOUR MIDTOWN MIAMI and spoke with the other members of the board and the management company about KAREN WOLF about her disability and behavioral issues, including her hallucinations or delusions, and symptoms of a bipolar mood disorder, such as mania and depression. As a result of her disability, she has been Baker Acted on several occasions due to her disability. In addition,

she would occasionally scream, have obsessive/compulsive cleaning episodes and leave items outside her door, or her cat would escape. However, she would not be cited or given a violation for these episodes.

11. On May 29, 2020, JAY WOLF received a demand letter claiming that KAREN WOLF had done the following items in her home and Ms. WOLF needed to vacate the premises:

   (i) Screaming loudly and continuously in the Unit with the door open, such that other residents in the Community cannot peacefully reside in their homes;

   (ii) Continually leaving debris and trash in the hallway outside the Unit;

   (iii) Leaving her cat in the hallway outside of the Unit where it urinates and defecates;

   (iv) Throwing objects from the Unit's balcony to the sidewalk below; and

   (v) Causing water leaks that have affected other units and the Association's common areas.

12. FOUR MIDTOWN MIAMI claimed that such actions were a direct threat to the health and safety of others, including throwing objects from a third-story balcony.

13. Immediately, KAREN WOLF had agreed to be medicated and get treatment. Furthermore, JAY WOLF sealed the balcony door so KAREN could not obtain ingress or egress on the patio to throw objects and JAY WOLF also added an automatic shut off on her faucets so there would be no leaks that would be a danger to property.

14. Mr. WOLF, through counsel, advised FOUR MIDTOWN MIAMI about Ms. WOLF's disability and need for a reasonable accommodation, as well as the measures taken to ameliorate any direct threat.

15. Starting on June 16, 2020, FOUR MIDTOWN MIAMI and Mr. WOLF engaged in the interactive process to find a reasonable accommodation for KAREN WOLF to remain in the unit.

16. While Ms. Wolf no longer posed a direct threat to the health and safety of others, FOUR MIDTOWN MIAMI believed that her disability-related behaviors were a nuisance to the other members of the association.

17. From June 16, 2020, to January 20, 2021, the interactive process was ongoing, and JAY AND KAREN WOLF agreed to the accommodation and procedures proposed by FOUR MIDTOWN MIAMI:

<u>Cleaning issue</u>

- The request to call in an outside cleaning service as a first resort seems overly complex.
- Should Ms. Wolf leave garbage, cat litter, etc., in common areas, or allow flooding to occur, the Association agrees to clean up the mess, and to notify Mr. Wolf of having done so.
- In lieu of levying fines as it does when other residents leave trash in the common areas, the Association will invoice Mr. Wolf in the amount of $50, which is Clean and Glow's standard rate for such services.

<u>Keeping the door closed</u>

- Should a cat escape, security will knock on the door and ask Ms. Wolf to bring in the cat.
  - If she does not answer, security will call Ms. Wolf at 646-522-1928.
  - If she does not respond, security will call Mr. Wolf at 917-837-2991.
  - If Mr. Wolf does not respond, Miami-Dade Animal Services may be notified.
- If cleaning is required due to urination, defecation, vomiting, etc., Mr. Wolf agrees to pay the cleaning fee of $50.

<u>Suicidal ideation</u>

- The Association cannot incur the responsibility of liaising with Ms. Wolf's doctor or obligating its security contractors to do so.
- Contingent upon receiving a note from Dr. Caddy advising that it is a medically acceptable course of action, the Association will agree to call Mr. Wolf as a first resort, rather than the police.
- Unless the Association (or its security contractor) believes Ms. Wolf's life is in imminent danger, it will be the obligation of Mr. Wolf or Dr. Caddy to call the police.

- We must have written authorization from Dr. Caddy documenting his professional opinion that Ms. Wolf's circumstances have changed and that she does not pose a direct threat to herself.
- If Mr. Wolf is not available, police will be called.
- Mr. Wolf also may be called if/when neighbors complain about screaming/singing noise.
- Mr. and Ms. Wolf recognize that the Association has no control over actions taken, or emergency calls made, by other residents of Four Midtown.

Threatening behavior

- In the event Ms. Wolf exhibits threatening behavior, Mr. Wolf will be called to intercede; he will receive an opportunity to contact Ms. Wolf's doctor before the police are called.
- We must have written authorization from Dr. Caddy documenting his professional opinion that Ms. Wolf's circumstances have changed and that she does not pose a direct threat to others.
- If there is a sincere belief that the safety/welfare of others is at risk, police will be called immediately; Mr. Wolf will be notified.
- Mr. and Ms. Wolf recognize that the Association has no control over actions taken, or emergency calls made, by other residents of Four Midtown.

Additional Issues

- Household items (e.g., refrigerator drawers) are not allowed to be moved into the hallway during cleaning.
- Ms. Wolf will be given an opportunity to retrieve any items before they are discarded, following the same protocol as with escaped cats.

18. From October 30, 2020 to June 9, 2021, there were no violations against Ms. WOLF, as whenever there was an issue the protocol agreed to was followed by FOUR MIDTOWN MIAMI.

19. Beginning in June of 2021, FOUR MIDTOWN MIAMI ceased following the procedures, and instead began to send many violations for minor nuisances including many issues specifically included in the agreement. These violations included issues, such as the cat escaping from the home, leaving items in the hallways, wearing a bathing suit in the common areas, sitting

in the lobby in the morning. It was clear that there was an effort to harass and bother Ms. WOLF and find a way to evict her from her home.

20. As a result of the constant harassment and complaints directly to Ms. WOLF, it exacerbated her mental illness, and caused issues to escalate. FOUR MIDTOWN MIAMI had actual knowledge that such confrontation would escalate matters, and such was the reason for the agreement with JAY WOLF.

21. On August 11, 2021, new counsel for FOUR MIDTOWN MIAMI contacted Mr. Wolf though his counsel and began complaining about Ms. Wolf's behaviors and again gave her ten days to vacate the apartment.

22. JAY WOLF was shocked and dismayed that FOUR MIDTOWN MIAMI failed to utilize the reasonable accommodation agreement and procedures that were agreed to by the parties and advised new counsel of the agreement reached with his predecessor and the association. Further, counsel for JAY WOLF advised FOUR MIDTOWN MIAMI that JAY WOLF was going to file a HUD Fair Housing Complaint for the treatment of KAREN WOLF constant harassment, and repudiation of the accommodation agreement.

23. In response, new counsel for FOUR MIDTOWN MIAMI responded:

> The alleged agreement referenced in your Email is ridiculous and poses an undue burden on the Association (to have to call Mr. Wolf for every violation and essentially, prevents the Association from contacting the police.) The obligations and requirements Mr. Wolf feels the Association is required to follow puts the entire burden on the Association and lets Mr. Wolf write a check instead of remedying the violations or taking responsibility.

24. Following the response, additional complaint was issued to KAREN WOLF in an unceasing campaign to cause her to vacate her unit.

25. On September 2, 2021, based upon the repudiation of the accommodations agreed upon and the campaign of harassment against Ms. WOLF, JAY WOLF filed a Fair Housing Complaint with HUD based on discrimination and denial of accommodation.

26. On the afternoon of September 8, 2021, Ms. Wolf was screaming as she had hurt herself and FOUR MIDTOWN MIAMI decided to call the police and had Ms. WOLF Baker Acted due to her mental illness.

27. On September 10, 2021, counsel for FOUR MIDTOWN MIAMI sent a demand letter that KAREN WOLF vacates the unit as she was Baker Acted and is thus a danger to herself and others and must vacate the community within 10 days.

28. KAREN WOLF is not going to be discharged from the hospital until September 18th and was held at the hospital to try new medications that she will tolerate, however, it was made clear that she was not going to be a danger to herself or others and was medically and psychologically stable.

29. When this information was presented to FOUR MIDTOWN MIAMI, counsel for the Association maintained that KAREN WOLF would need to be out by September 20th.

30. Defendant's conduct caused KAREN WOLF and JAY WOLF significant emotional distress.

31. Defendant conducted no objective, individualized inquiry whatsoever into whether KAREN WOLF posed a direct threat to persons or property at the property.

32. As a result of Defendant's actions described above KAREN WOLF and JAY WOLF suffer and continue to suffer actual damages as well as irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and deprivation of Plaintiffs' right to equal housing opportunities regardless of disability.

33. Defendant FOUR MIDTOWN MIAMI, acted in reckless disregard of the federally protected rights of KAREN and JAY WOLF and are liable for punitive damages.

34. Plaintiffs have retained the Disability Independence Group to represent her in this cause and have agreed to pay them a reasonable fee for their services.

35. Plaintiffs have complied with all necessary conditions precedent to the bringing of this action, or such conditions precedent has been waived.

**COUNT I- DISPARATE TREATMENT- DENYING OR MAKING A DWELLING UNAVAILABLE IN VIOLATION OF 42 U.S.C. § 3604(f)(1)**

36. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

37. FOUR MIDTOWN MIAMI had actual knowledge of KAREN WOLF's disability.

38. FOUR MIDTOWN MIAMI treated KAREN WOLF differently solely because of his disability and did not want her residing at FOUR MIDTOWN MIAMI or in the common areas.

39. FOUR MIDTOWN MIAMI demanded that KAREN WOLF vacate her home solely based upon manifestations of KAREN WOLF's disability.

40. Pursuant to 42 U.S.C. § 3604(f)(1), it is unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

41. Under 42 U.S.C. § 3604(f)(9), a limited exception to this provision exists allowing a landlord to reject "an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others."

42. In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. 28 CFR § 35.139.

43. Defendant made no individualized assessment about whether KAREN WOLF was a direct threat to the health or safety of others and failed to consider: (1) the nature, duration, and severity of the risk of injury; (2) the probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat.

44. FOUR MIDTOWN MIAMI did not consider whether KAREN WOLF had a history of overt acts, whether KAREN WOLF had received any treatment or the recommendations of his doctors or request any documentation whatsoever. Defendant had no objective evidence that KAREN WOLF posed a direct threat to persons or property, as is required to trigger the "direct threat" exception.

45. The Fair Housing Act does not allow for exclusion of individuals based upon fear, speculation, or stereotype about a particular disability or persons with disabilities in general.

46. Defendant's actions were based on unsubstantiated stereotypes about people with disabilities.

47. All employees at FOUR MIDTOWN MIAMI had actual knowledge that KAREN WOLF posed no danger to any person, as he had lived there for four years prior to the eviction demand.

48. Such demand to terminate the tenancy by Defendant was motivated by a

discriminatory purpose and in total disregard of Plaintiffs' rights and indifferent to the disability and needs of KAREN WOLF.

49. Defendant's threats to make housing unavailable to KAREN WOLF and constant violation notices because of KAREN WOLF's disability, is in violation of 42 U.S.C. § 3604(f)(1).

50. Further, as a direct and proximate result of Defendant's discrimination Plaintiffs have suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

**WHEREFORE**, Plaintiff, JAY WOLF, individually, and as parent and guardian for KAREN WOLF, demands judgment against FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC, to declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities; for compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

## COUNT II- FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF 42 U.S.C. § 3604(f)(3)

51. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 32 above as though fully set forth herein

52. At all times material, FOUR MIDTOWN MIAMI officers and agents had actual knowledge that KAREN WOLF has a disability and regarded her as a person with a disability.

53. Pursuant to this knowledge, FOUR MIDTOWN MIAMI agreed to provide KAREN WOLF a reasonable accommodation in order for her to live at her home and be independent in the community.

54. The parties spent time and resources agreeing to accommodations, and accepted the accommodations proposed by FOUR MIDTOWN MIAMI.

55. As such accommodations were proposed by FOUR MIDTOWN MIAMI, such accommodations would be reasonable, and not an undue burden or fundamental alteration for the large luxury condominium.

56. When new counsel was retained, the accommodations that were previously agreed and reasonable were repudiated and FOUR MIDTOWN MIAMI reneged on their agreement.

57. Pursuant to 42 U.S.C. § 3604(f)(3)(b), it is unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

58. Defendant's failure to modify its existing policies and practices to accommodate the disabilities of KAREN WOLF is discriminatory and unlawful.

59. Such actions by Defendant were in total and reckless disregard of Plaintiffs rights and indifferent to KAREN WOLF's disability and needs.

60. Further, as a direct and proximate result of Defendant's discrimination, Plaintiffs have suffered irreparable loss and injury including, but not limited to actual damages, humiliation, emotional distress, and deprivation of the right to equal housing opportunities regardless of disability.

**WHEREFORE**, Plaintiff, JAY WOLF, individually, and as parent and guardian for KAREN WOLF, demands judgment against FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC, to declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities; enjoining further discriminatory behavior and ordering a reasonable accommodation as previously agreed to, for

compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

### COUNT III – RETALIATION IN IN VIOLATION OF 42 U.S.C. § 3617

61. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

62. After JAY WOLF asserted the fair housing rights of KAREN WOLF, from June 2021 to September 2021, FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC,, retaliated against them by issuing violations in an attempt to develop a pretext to evict KAREN WOLF.

63. When FOUR MIDTOWN MIAMI was advised of the filing of a Fair Housing Complaint with the Department of Housing and Urban Development, which would include an investigation and administrative processes, FOUR MIDTOWN MIAMI decided to threaten to initiate eviction proceedings even though there was no direct threat to the safety of others.

64. The decision to threaten to, and then initiate eviction proceedings was to divest Plaintiffs of their administrative options under the Fair Housing Act and to strong-arm KAREN WOLF from her home.

65. Pursuant to 42 U.S.C. 3617 of the Fair Housing Act it is unlawful to: "coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under [the Fair Housing Act]."

66. The retaliation provisions of the Fair Housing Acts have been broadly applied to reach all practices, which have the effect of interfering with the exercise of rights under the fair housing laws.

67.  Such actions of Defendants were for the purpose of coercing, intimidating, threatening, or interfering with the residents' exercise of their fair housing rights.

**WHEREFORE**, Plaintiff, JAY WOLF, individually, and as parent and guardian for KAREN WOLF, demands judgment against FOUR MIDTOWN MIAMI CONDOMINIUM ASSOCIATION, INC, to declare that the actions of the Defendants violated the Fair Housing Amendments Act by retaliation and coercion, injunctive relief to cease all retaliatory actions, for compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

Respectfully Submitted on this 17th day of September, 2021.

DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Phone (305) 669-2822
Facsimile (305) 442-4181
E-Mail: mdietz@justdigit.org
aa@justdigit.org

By: /s/Matthew W. Dietz
MATTHEW W. DIETZ, ESQUIRE
FL. BAR NO.: 0084905